IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

ROBERT O. WATSON SR.,
    PLAINTIFF, Pro-se,

    -v-

CLEVELAND POLICE DEPT(and/or its rep), FIRST
DISTRICT POLICE DEPT.(and/or its representatives),
OFFICERS: JONATHAN SCHROEDER, JUAN MENDOZA, MICHAEL
DULLER, GIBB #466, SGT. KEVIN KELLY, SHERIFF GERALD
T. McFAUL, CUYAHOGA COMMON PLEAS JUDGES: TIMOTHY
McCORMICK, AND NANCY A. FUERST, CUYAHOGA COUNTY
PROSECUTOR: WILLIAM B. MASON, CUYAHOGA COUNTY
SOCIAL WORKERS SUPERVISOR: Ms. KEONIG
                DEFENDANTS.

CASE NO.

JUDGE 1:08CV2007

COMPLAINT

JUDGE OLIVER

MAG. WHITE

✲ NO PREVIOUS LAWSUIT(S) PERTAINING TO PRESENT IMPRISONMENT

This is a civil action based on 42 U.S.C. section 1983, for violation of STATE and U.S. CONSTITUT-IONAL RIGHT, UNDER THE IV,V, and XIV amendments, and hearby incorporate the FEDERAL RICO STATUTE under 1964(c) civil remedies. (THERE IS AN 8th AMENDMENT VIOLATION AS WELL UNDER U.S. CONSTITUTION)

DEFENDANTS
CLEVELAND POLICE DEPT.
FIRST DISTRICT POLICE DEPT.
JONATHAN SCHROEDER(NOW DECEASED)
JUAN MENDOZA
MICHAEL DULLER
OFFICER GIBB #466
Sgt. KEVIN KELLY
SHERIFF GERALD T. McFAUL
JUDGE TIMOTHY McCORMICK
JUDGE NANCY A. FUERST
CUYAHOGA COUNTY PROSECUTOR WILLIAM B. MASON
CUYAHOGA COUNTY SOCIAL WORKER Ms. KEONIG

    Defendants are being sued under the color of State law and, are being sued in their individual, personal, and/or official capacities.

### Jurisdiction

    Plaintiff Robert O. Watson Sr., is a citizen of the United States and, is presently incarcerated at the Marion Correctional Facility in Marion Ohio.

## STATEMENT OF FACTS

(1) On or/about August 22, 2006, at approximately 11:40pm., a drug raid framing was initiated by the defendant, the late A.J Schroeder. Defendants, Duller, Gibb, Mendoza, Sgt.Kelly et al., stopped, detained, and removed Plaintiff Watson's apartment keys from his pocket, at gun point, several blocks away from Watson's apartment, then handcuffed and threw the Plaintiff into the back of a police car. Plaintiff was taken back to his apartment, and was detained directly in front of his apartment, held within the police car, as all of the 8 to 10 plain clothed officers entered the plaintiff's apartment on the groundfloor level using the Plaintiff's keys.

(2) During the initial detainment, Plaintiff was never mirandadized, but was told that he'd better tell the officer speaking to him, what key would open the door to the groundlevel security door. Plaintiff did not comply nor bend to the threats made by the officer speaking to him, which was officer Schroeder. The 8 to 10 officers entered the ground level security door and stormed the apartment where his fiancee and child were asleep on the couch. The 8 to 10 officers gained entry via the plaintiff's keys, and stealth.

(3) Plaintiff Roupe, alone with their 6 week old daughter, asleep on Roupe's chest, as Roupe was asleep as well. Both, Roupe and her infant were startled awake by the flagrant incursion of the harsh, demanding voices, flashlights and guns wielded by the 8 to 10 well armed, plain clothed strangers, yelling for her and her infant to get down on the floor or they would be shot. This "storming" of the one bedroom apt., by these rogue bred band of "cronies", was committed without an arrest warrant, without legitimate, probable cause, nor were there a valid search warrant.

(4) Plaintiff Roupe, having nothing on save for an ill-fitting T-strap T-shirt, asked that she be allowed to put on something more appropriate, and was allowed to do so, after herself and the infant were searched. The infants diaper was torn off and the infant was "body searched". (see police complaint)

(5) Roupe and her infant were then ordered out into the hallway connected to the apartment building, until the entire unauthorized, "forced" consent was conducted. Roupe claims that she was coerced into consenting to the search with the threat of her infant being taken away should she not comply with the illegal search request.

(6) Police justified their illegal stop, detain, arrest of Watson, their illegal entrance and illegal search of Roupe and their infant daughter, and the apt., claiming that there "was" an "unknown" and "unidentifiable", "Confidential Informant" whom, no one knows the whereabouts of, nor does anyone know the identity of, and if

there were this "confidential Informant", who had supposedly bought drugs from the plaintiff Watson, once inside of the apartment's hall, and up the 20 or more steps, and then to the left, in order to see the plaintiff Watson, this "confidential Informant" (herein after, "CI") would not have been observable by the police or anyone else for that matter. The apartment building is a four unit complex and all of the units are accessable at the top of the 20 odd steps. All things considered, the mere possibility of a "CI" being involved is far too remote. The very same officers involved in this illegal raid, have on another occassion, were involved in another investigation concerning the plaintiff, and have expressed an abnormal interest in plaintiff Watson. Plaintiff Watson believes that this is primarily due to the fact that Watson is an African-American, and his fiancee is Caucasian. Watson has been warned by members of the first district police department, "to remove himself, and his nigger loving girlfriend from the West side" of cleveland.

(7) The alleged drugs were supposedly found inside of a purse, in the apartment. This "purse" was not checked for identification, nor prints, nor was it, the "purse" confiscated as evidence. Any reasonable minded person could only deduce that, this was merely a "ploy" in order to frighten Ms.Roupe into cooporating with the police. 696-KIDS were notified, and Plaintiff Watson and Ms.Roupe's child was removed from their care. Roupe was not arrested that night but, Watson was arresrted.

(8) Roupe, after consulting with family members, filed a citizens complaint several days later alleging that the first district police had violated numerous State as well as U.S. Constitutional Rights. "Illegal entry, destruction of property, threats,intimidation, and sexually violating her infant", just to name a few.

(9) Approximately a week later atfer filing the compliant, Ms.Roupe was indicted in connection with Plaintiff Watson on numerous "trumped up" drug charges. Ms.Roupe was subsequently arrested.

(10) Watson was unable to post bail, and on/or about April 16, 2007, a "mock" suppression hearing was staged in the court room of Judge Timothy McCormick. An attorney, known thruoghout the court as an assassin for the court, "Highly trained" assassin, a Mr.Ehoff, gave the "appearance" of representing the plaintiff Watson. Actually, Mr.Ehoff was working in collusion with the pliantiff's opposition, and he intentionally failed to adequatedly arm himself to defend Mr.Watson.

(11) Sgt.Kevin Kelly took the stand for the first district police department representing, or rather, "misrepresenting" the actual facts that took place on the night of August 22.2006. From the "look" and the "sound" of things, plaintiff Watson felt that the out come had been "predetermined".

(12) Plaintiff Watson, after witnessing the blantant "farce", disguised as a "suppresssion hearing", immediately initated the process of disqualifing his attorney Ehoff, and Judge Timothy McCormick, and elected to represent himself. Judge McCormick, on one of several occasions of judicial indiscretions, demanded that Ms.Roupe, who was eight months with child at the time, immediately leave the hospital and to "get her ass to court", or be arrested, after Ms.Roupe had complained of extreme labor pains, possibly brought on by the stress of the trial. Pliantiff Watson filed to have McCormick removed, and "for

Good Cause Shown" judge McCormick was removed from residing over plaintiff Watson's trial.

(13) Det.Duller, responding to the citizens complaint filed by Ms.Roupe, stated that "Watson's keys were used" to gain entry into the apartment. This was a total contradiction to what Sgt.Kevin Kelly had testified to at the first suppression hearing. Pliantiff Watson had "unearthed" this very crushing piece of evdence once he chose to represent himself. The response to the complaint was found by the plaintiff, stating in part, "...with keys in hand, "we" knocked, identified "ourselves", "we" entered the apartment to secure it for a county warrant."

(14) Armed with this information concerning the actual means of entry, plaintiff Watson filed for a "Renewed motion for asuppression hearing based on newly found evidence". A new suppression hearing was held on/or about 9/26/2007, in the court room of judge Nancy A.Fuerst.

(15) On/or about 9/26/2007, Sgt.Kevin Kelly took the stand maintaining his very incredulous testimony concerning how entry was gained, alleging that Ms.Roupe had opened the door for the 8 to 10 officers. Sgt.Kelly acknowledged the fact that he had read/reviewed the response to the complaint, and that he had signed off on the response, notwithstanding the fact that the response included him in a crimial act. Sgt.Kelly endeavors to appease the court, while disrespecting the court with meaningless "Mumbo-Jumbo" as to why he had allowed his underling to implicate his direct supervisor in a crime. Sgt.Kelly was asked at one point, had he spoken to anyone, other than the prosecutor about what he was to testify to on that day, and Sgt.Kelly stated that he had spoken to Det.Duller, and to Det.Mendoza.

(16) Second to testify was Det.Duller who when asked about writer of the response to the complaint, he stated that he was. Realizing that his written response to the complaint did not at all comport with the statemnets made by his superior, Det.Duller decides to commit "Kamikaze" and commit blantant perjury by claiming that "he" wrote the complaint but, that he was "not" present at the initial entry inorder to tell what actually happened, and thaat he had "gathered" the information contained within his response to the complaint via the late Det.Schroeder's report. However,when he was shown the report written by Det.Schroeder, and asked to point out where in the report does it mention "how" entry was grained, Det.Duller was compelled to admit that no such information was contained within the report of Det.Schroeder. When he was asked had he spoken with anyone about what he was to testify to on that particular day in court, Det.Duller stated that he had spoken to no one, contrary to what his superior, Sgt.Kelly had testified to prior to Det.Duller taking the stand.

(17) Det.Mendoza was the last to testify, and he stated that Det.Duller remained at his side in the vice car durring the initial entry,which is far from the truth, due to the fact that, Det.Mendoza and the plaintiff were the only two who remained within the vice car as all of the vice officers rushed to the plaintiff's groundfloor entrance, and proceeded on into the apartment. When Det.Mendoza was asked had he spoken to anyone partaining to what he was to testify to on that day, he stated that he had spoken to no one, contradicting the testimony of Sgt.Kelly as well.

(18) Det.Gibb was overheard saying that he "knew that this shit would come back to bite them in the ass" or something to that effect. This outburst was overheard by someone privy to the conversation which had taken place in the court room on the day of the second suppression hearing. Plaintiff will reveal the source in due time for the court.

(19) Judge Nancy A.Fuerst, sworn to uphold the law, witnessed all of the shocking untruths of these band of cronies, the blatant perjury and the huge inconsistancies, and refused to do what she has vowed to do. Her non-action supported and encouraged the criminal acts of those thugs with honorable badges.

(20) On or about 12/11/07, plaintiff Watson was brought before Judge Fuerst, and was granted the right to represent himself. Trial was set in case #06-485592A. A prior trial was had in case #06-479471, whereas, plaintiff Watson represented himself, and was found guilty of two counts of promoting prostitution, and one count of compelling prostitution. (Currently in the appeals court) On this day that plaintiff Watson being granted to represent himself, Judge Fuerst decided to go ahead and sentence Watson on case #06-479471. Watson was sentenced to a 5 year term on current charges, both promoting charges, (18) months, and (5) years on the compelling charges. On/or about 12/13/07, all charges pertaining to case #06-485592-A were "dismissed".

(21) Due to all of the aforementioned acts perpetrated by all of the defendants, directly and/or indirectly, all of the named and/or names unknown at this time the defendants are responsible for the following acts; Working in collusion to violate pliantiff Watson's U.S. Constitutional rights as well as State constitutional rights. Additionally, due to the defendants insidious wholesale framing of an innocent man, by utilizing unscrupolous tactics, that includes, but is not limited to; illegal search incident to arrest(no probable cause to stop and detain), failure to Marandadize, illegal entry, cruel and unusual punishment, intimidation, coercion, mental and emotional anquish perpetrated on plaintiff's fiancee and their infant daughter, illegal search and seizure of the plaintiff's apartment, planting of drugs, marked money, filing of false police reports based on either fabricated and/or embellished events, perjury, libel, comspiring to obtain a false conviction and injury to the plaintiffs property and/or business, which qualifies the defendants under the FEDERAL RICO ACTIVITIES STATUTE.

(22) Ms.Roupe's unscupulous attorney used quite insidious manipulation to convince Ms.Roupe to accept an undeserving plea in case #06-485592-B. The possibility of Ms.Roupe being convicted, or even going to trial, without an eyewitness, the identity of the "CI", and without the lead officer to instigate things further, was quite infinitesimal, to none.(proceedings are currently underway to compel Ms.Roupe's attorney to answer to his nefarious actions) Due to the criminal acts of the defendants with much assistance from Ms.Roupe's attorny,plaintiff Watson and Ms.Roupe are so very overwhelmed, mentally and physically and emotionally distraught due to the very undeserving odyssey they've been subjected to, both defendants are currently engaged in an irreconciable estrangement.

## RELIEF REQUESTED

(1) The Cleveland Police Department, $500,000.00(five hundred thousand dollers) punitive. $250,000.00(two hundred fifty thousand dollars) compensatory.

(2) The First District Police Department, $500,000.00(five hundred thousand dollars)punitive. $250,000.00(two hundred fifty thousand dollars) compensatory.

(3) The Estate of the late first district police officer Jonathan Schroeder, $1,000,000.00(One million dollars)punitive, $250,000,00(Two hundred fifty thousand) compensatory.

(4) First district officer Juan Mendoza,$500,000.00(five hundred thousand dollars)punitive, $250,000.00(two hundred fifty thousand dollars)compensatory.

(5) First district police officer Michael Duller $1,000,000.00(One million dollars) punitive, $1,000,000.00(One million dollars) compensatory.

(6) First district police officer Gibb #466, $1,000,000.00(One million dollars) punitive, $250,000.00 (two hundred fifty thousand dollars)compensatory.

(7) First district police officer Kevin Kelly, $2,000,000.00(two million dollars) punitive, $1,000,000.00 (One million dollars)compensatory.

(8) Sheriff Gerald T.McFaul, $500,000.00(five hundred thousand dollars)punitive, $500,000.00 (five hundred thousand dollars) compensatory.

(9) Judge Timothy McCormick, Injunctive and declaratory relief, and monetary relief in the amount of $250,000.00 (two hundred fifty thousand dollars) punitive, $250,000.00 (two hundred fifty thousand dollars) compensatory.

(10) Judge Nancy A.Fuerst, Injuncttive relief and declaratory relief, as well as monetary relief in the amount of $500,000.00 (five hundred thousand dollars)punitive, $500,000.00 (five hundred thousand dollars)compensatory.

(11) Cuyahoga County prosecutor William B.Mason, $500,000.00 (five hundred thousand dollars) punitive, $500,000.00 (five hundred thousand dollars) compensatory.

(12) Cuyahoga County social worker supervisor Ms.Keonig, $1,000,000.00(One million dollars) punitive, $1,000,000.00(One million dollars) compensatory.

Plaintiff further respectfully ask that the negligent libel found within the body of the States "motion in opposition to defendants plea withdrawal" is removed expediticusly! The State referred to plaintiff Watson as an, "F.B.I. informant", which isn't even remotely a possibility! This attempt to assassinate Mr.Watson's character was done without due diligence. Plaintiff Watson has never been, nor will he ever succumb to such law enforcement pressures that would compel him to become a rat for law enforcement.

To allow this malicious act of libel to continue to exist, would be not only a deliberate , and wreckless indefference to the care and safty of plaintiff Watson, but also a grave miscarriage of justice.

Signed this \_\_\_\_11th\_\_\_\_ day of \_\_August\_\_, 20 08.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

\_\_8/14/08_____  \_\_\_\_*Mr. Robert O. Watson*_____

(Date)                                                   (Signature of Plaintiff)